UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TAMMI LEE GRANT,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL,<br><br>　　　　Defendant. | Case No. 16-cv-04806-RMI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART, GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING CASE**<br><br>Re: Dkt. No. 21, 22 |

Plaintiff Tammi Lee Grant seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits under Title II and Title VII of the Social Security Act. Plaintiff's request for review of the Administrative Law Judge's ("ALJ's") unfavorable decision was denied by the Appeals Council. The ALJ's decision is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 6, 11). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment in part, grant Defendant's motion for summary judgment in part and remand this action for further proceedings.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF MEDICAL EVIDENCE

On February 29, 2008, treating physician Greg Holst, M.D., diagnosed cervicalgia and chronic fatigue. (AR 814).

On November 14, 2010, Plaintiff was treated for acute congestive heart failure, and anasarca with massive ascites. (AR 357-366).

A lumbar spine X-ray dated May 3, 2011, found grade 2 anterolisthesis of L5 on SI measuring approximately 15 mm, bilateral pars defects, severe narrowing of L5-S1, moderate hypertrophic spurs anteriorly, and degenerative changes in facet joints at L3-4 and L4-5. (AR 488).

On June 28, 2011, consultative examiner Paul Butler, Ph.D., found "major depressive disorder, recurrent, moderate," and GAF 50. (AR 392). He stated that Plaintiff is "likely to have difficulty performing both simple as well as complex tasks. . . Her workday is likely to be interrupted by her psychiatric condition." (*Id*.). Her ability to handle stress in the workplace was minimal. (*Id*.)

Also on June 28, 2011, consultative examiner Brian Dossey, M.D, diagnosed chronic lumbosacral strain and a history of congestive heart failure with fatigue. (AR 397). He found that Plaintiff could sit and walk for up to six hours, and there were no limits on sitting, lifting, carrying, or manipulative activities. (AR 397-398). Straight leg raising was negative seated, "and essentially negative at 90 degrees supine; however, the claimant did at the very extreme say that

2

she started to feel it in her low back and right hip." (AR 397).

On July 6, 2012, consultative examiner Herbert Tanenhaus, M.D., found major depressive disorder, mild, with no significant impairments due to her psychological condition. (AR 607).

On August 12, 2011, an MRI of the lumbar spine showed severe neural foraminal stenosis at L5-S1 due to anterolisthesis of L5 relative to S1 and a diffuse disc bulge. There was flattening of both L5 nerve roots and exclusion of normal epidural fat surrounding L5 nerve roots passing through both neural foramina. Anterolisthesis appeared related to a bilateral pars defect. The L5 disc space was severely narrowed. (AR 401).

On December 6, 2011, lumbar spine X-rays showed unchanged spondylolisthesis at L5-S1, measuring 5 mm on flexion and extension. (AR 403).

James Jaworski, M.D., who performed bilateral L5-S1 transforaminal blocks on several occasions, noted on October 18, 2012, that Plaintiff's pain was aggravated by standing or sitting. The right leg and back pain had worsened, and she now complained of some left side symptoms as well. (AR 783-784). On February 14, 2013, Dr. Jaworski noted that the pain radiated to both legs. (AR 783-784). He wrote on October 10, 2013, that Plaintiff could not tolerate standing. (AR 782). On September 30, 2014, he noted, "If she stands or sits for any length of time, it starts to hurt more, so she has to constantly change positions." (AR 862).

Left knee X-rays dated November 5, 2013, showed very mild osteoarthritis. (AR 763). An MRI on December 10, 2013, found chondromalacia of the patella, mild osteoarthritic changes, primarily of the lateral component, minor joint effusion, and amorphous signal changes within the menisci. (AR 741). In addition to pain, Plaintiff reported popping, infrequent instability, and moderate difficulty walking 5-10 minutes due to knee and low back pain. (AR 769-771).

In addition, Plaintiff has been treated for sleep apnea, fibromyalgia, headaches, and right side pain. (AR 747, 858).

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or

3

more months.  20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.  The ALJ must consider all evidence in the claimant's case record to determine disability (*id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*id*. § 416.920).  "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation.  (AR 23-32).

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled.  20 C.F.R. § 416.920(b).  If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled.  *Id.*  The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 3, 2012.  (AR 25).

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii), (c).  "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).  The ALJ found that Plaintiff suffered the following severe impairments: congestive heart failure, lumbar spine stenosis, osteoarthritis of both hands, morbid obesity, depression, diabetes, carpal tunnel syndrome, and bilateral knee arthritis.  (AR 26).

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404.  *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing.  *Id.*  If the claimant is successful, a disability is presumed and benefits are awarded.  *Id*.  If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.  *Id*. § 416.920(a)(4)(iv),(e).  Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  (AR 26).  Next, the ALJ found that Plaintiff had the residual functional capacity to

4

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with several exertional and non-exertional limitations. (AR 27-28.)

At Step Four, the ALJ found that Plaintiff could not perform any of her past relevant work. (AR 30). At Step Five, after consulting with a vocational expert, the ALJ found that there were a significant number of jobs that Plaintiff could perform in the national economy. (AR 31). Accordingly, the ALJ found that Plaintiff had "not been under a disability, as defined in the Social Security Act," through the relevant time period. (AR 32).

## DISCUSSION

### I. Opinion of Treating Pain Management Specialist

Plaintiff contends that the ALJ committed harmful legal error by failing to evaluate the opinions of the treating pain management specialist, James Jaworski, M.D. It is undisputed that Dr. Jaworski is a board-certified anesthesiologist and Plaintiff's primary pain management specialist. Dr. Jaworski opined on October 10, 2013, that "I do not think [Plaintiff] can tolerate standing." (AR 781). Dr. Jaworski, who has treated Plaintiff's lumbar spondylolisthesis with repeated transforaminal and lumbar epidural injections (AR 779-786-862), also opined on September 30, 2014, that "[i]f she stands or sits for any length of time, it starts to hurt more, so she has to constantly change position." (AR 862).

At the hearing, the ALJ questioned Plaintiff regarding her abilities as follows:

"[ALJ] Q How long can you sit before the pain is so bad you just can't stand it anymore?
[Plaintiff] After 10 minutes I start fidgeting and moving and it isn't long after that.
Q Okay. What about walking and standing, any problems with that?
A Yes. Standing is horrible.
Q So how long can you stand before the pain's so bad you have to sit down or lie down?
A Ten minutes.
Q What about walking, how far or for how long can you do that?
A Just at a walk, half a mile. In a grocery store I can lean on a cart and get by that way.
That helps take the pressure off, doesn't solve it.

(AR 53-54).

The ALJ found that Plaintiff had the residual capacity to "sit and stand and/or walk six

5

1 hours in an eight hour workday." (AR 27).

2 The ALJ did not mention Dr. Jaworski or his opinion in his decision. Under the Treating Physician Rule, the opinion of a treating physician is accorded more weight than the opinions of other physicians. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). A decision rejecting a treating doctor's opinion that is contradicted by that of another doctor must set "forth 'specific and legitimate reasons supported by substantial evidence in the record for doing so.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see Montijo v. Secretary of Health and Human Services*, 729 F.2d 599, 601 (9th Cir. 1984) ("The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so."); *see also Thomas v.* Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (an ALJ may reject a treating physician's opinion when the opinion is inadequately supported by clinical findings). As the court held in *Marsh v. Colvin*, 792 F.3d 1170, 1172-73, (9th Cir. 2015) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) "[b]ecause a court must give 'specific and legitimate reasons' for rejecting a treating doctor's opinions, it follows even more strongly that an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them." "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 at 1012.

Defendant contends that the ALJ was not required to discuss the medical opinions of Dr. Jaworski, arguing that they were neither probative nor significant because they were contrary to Plaintiff's activities of daily living. This contention is meritless. Dr. Jaworski's opinions on whether Plaintiff could stand are both probative and significant to the issue of whether she could perform the light work dictated in the RFC finding. Further, the ALJ's brief summary of Plaintiff's daily activities does not paint an accurate picture of what Plaintiff actually does, based on the evidence in the record. *See* AR 58 (actual description of minimal care provided for horses); AR 56 (description of difficulties with housework and showering); AR 395 (consultative examiner reporting that Plaintiff stated she can only do five minutes of normal chores and cannot do outside

6

work). Finally, the court cannot infer non-existent reasoning and/or analysis into the ALJ's decision. "Long-standing principles of administrative law require use to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Social Sec.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

The court therefore concludes that the ALJ erred in rejecting the opinions of Dr. Jaworski without setting forth "specific and legitimate reasons supported by substantial evidence in the record for doing so." *See Tonapetyan*, 242 F.3d at 1148. Accordingly, this case will be remanded for the ALJ to reconsider Plaintiff's RFC in light of the evidence of Dr. Jaworski's medical opinion.

## II. Consideration of Medical Evidence of Limitations Caused by Severe Back Pain

Plaintiff contends that the ALJ committed harmful legal error by failing to appropriately consider medical evidence of limitations caused by severe back pain. As objective evidence of her pain and her limitations in standing, Plaintiff cites the MRI of her lumbar spine taken on August 12, 2011, which showed as follows:

> L5 demonstrates approximately 12 mm of anterolisthesis relative to S1….Severe narrowing of the L5-S1 disc is noted. There is a diffuse disc bulge that is posterior to the inferior endplate of L5. This disc material extends into the neural foramina bilaterally and appears to compress the L5 nerve roots passing through this neural foramen. Impingement is suspected bilaterally since there is no normal epidural fat is [sic] surrounding the nerve roots at this position…. Anterolisthesis appears related to a bilateral pars defects. The L5-S1 disc space is severely narrowed.

(AR 401).

The ALJ decision rejected this evidence and the supporting X-rays and relied on the opinion of the non-treating physician contracted by the state agency to examine claimants. (AR 29). The ALJ stated that at the consultative examination, Dr. Brian Dossey found that Plaintiff "had only some minimal paravertebral muscle tenderness and spasm." (AR 29). This physician had no access to the imaging (AR 389), such as the X-ray of May 2011 showing "severe narrowing of the L5-S1 disc" and "grade 2 anterolisthesis of L5 on S1 measuring 15 mm." (AR

7

488).

Plaintiff consulted with a neurosurgeon, John Aryanpur, M.D., who advised against surgery. The ALJ's decision states that "[a]lthough claimant underwent several lumbar spine epidurals (Exhibit 27F/3 [AR 776]), the neurosurgeon felt that she was not a surgical candidate because her neurologic damage was not severe enough (Exhibit 30F/3 [AR 851])." (AR 29). Although the neurosurgeon's report is not in the Administrative Record, an account was made to Plaintiff by her primary treating physician, Tamara Dennis, M.D., on June 9, 2014. (AR 851). The text of Dr. Dennis's note to the plaintiff was as follows:

> I obtained a copy of Dr. Aryunpur's [sic] consultation. He indeed said that you might be a candidate for an operation on your back but that he would advise against it unless your neurologic damage became severe (ie documented nerve damage on an EMG study causing weakness in your legs). This was because he was quite worried about your other medical problems, mainly at that time your heart and your weight.

(AR 851).

Thus the neurosurgeon's reason for not recommending surgery unless Plaintiff became significantly worse was because of the history of congestive heart failure and her obesity. This is not reflected in the ALJ's description of the neurosurgeon's opinion. By leaving out this information, the ALJ misstated the reason the neurosurgeon felt Plaintiff was not a surgical candidate and created an implication that the decision was based solely on the lack of severity of Plaintiff's condition. This was not the case.

Defendant attempts to bolster the ALJ's rejection of the imaging evidence by stating that the consultative examination showed that Plaintiff "was not in any pain" and, quoting the ALJ, had "only some minimal paravertebral muscle tenderness and spasm." Defendant's argument is again meritless. The findings by the consultative examiner did not show that Plaintiff was not in any pain. The examiner found that Plaintiff had "spasms at L4-L5 area, radiating to the right sacroiliac, right hip joint area with palpation. There is tenderness to palpation in the same area." (AR 397). These are clinical findings of pain that corroborate Plaintiff's history of "low back pain and right hip pain." (AR 394.)

The court finds that in light of the rejection of the imaging evidence in favor of the opinion

8

of the consultative examiner who did not consider that evidence, along with the misstatement of the neurosurgeon's reason for not recommending surgery, the ALJ's conclusion regarding the possible limitations caused by Plaintiff's back pain was not supported by substantial evidence. The court will therefore remand for further consideration of this issue.

### III. Consideration of Medical Evidence of Limitations Caused by Mental Impairments

Plaintiff contends that the ALJ committed harmful legal error by failing to appropriately consider medical evidence of limitations caused by mental impairments and by misstating the evidence.

On June 28, 2011, consultative examiner Paul Butler, Ph.D., found "major depressive disorder, recurrent, moderate" and GAF 50. (AR 392). He stated that Plaintiff is "likely to have difficulty performing both simple as well as complex tasks . . . Her workday is likely to be interrupted by her psychiatric condition." (*Id*). He described Plaintiff's ability to handle stress in the workplace as "minimal." (*Id*.)

The ALJ found as follows in regard to Plaintiff's mental condition and its effect on Plaintiff's RFC:

> The limitation to simple, repetitive tasks is because of depression and the opinion of the psychological consultative examiner, Dr. Butler, that claimant would have difficulty with complex tasks (Exhibit 3F/4). However, Dr. Butler also found claimant's condition to be treatable (Exhibit 3F/4), and nothing in the treating records supports the conclusion that she would have difficulty performing simple tasks or that her workday would be interrupted by her psychological condition (Exhibit 3F/4). There is also nothing in the record to support a GAF of 50 (Exhibit 3F/4). Treating records describe claimant's depression as being controlled with medications (Exhibit 8F/2), and a later psychiatric examination performed on July 16, 2012 found claimant to have only mild depressive symptoms (Exhibit 13F/4). No treating doctor has indicated that the claimant cannot work because of depression. In fact, claimant has had very minimal treatment for depression.

(AR 30).

The ALJ's description of Dr. Butler's findings is incomplete. Dr. Butler did not find that Plaintiff would have difficulty only with complex tasks. He found that she is "likely to have difficulty performing both simple as well as complex tasks . . . Her workday is likely to be interrupted by her psychiatric condition." (AR 392). He described Plaintiff's ability to handle

9

stress in the workplace as "minimal." *Id*. However, the ALJ did give a specific and detailed explanation for rejecting the opinion for rejecting Dr. Butler's opinion and the conclusion that Plaintiff cannot perform simple tasks. As the Ninth Circuit has held, an ALJ may reject a treating physician's opinion when the opinion is inadequately supported by clinical findings. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Logically, this must hold true of a non-treating physician's opinion as well. Plaintiff's generalized claim of "dozens" of references to depression in the record does not invalidate the ALJ's conclusion. Neither does her citation to the treating physician's report of July 2014 describing Plaintiff's depression as "recurrent, moderate." Accordingly, the court finds no error.

## CONCLUSION

For the reasons stated above, the court hereby GRANTS Plaintiff's motion for summary judgment as to issues one and two, and GRANTS Defendant's motion for summary judgment as to issue three. The court hereby REMANDS this matter for further proceedings in accordance with this order.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: February 6, 2018

ROBERT M ILLMAN
United States Magistrate Judge